# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |  |
|---|---|---|
| *In re:* | ) | Case No. 09-73717-FJS |
|  | ) |  |
| Charles D. Hadley, III, | ) |  |
| Janet M. Hadley, | ) |  |
|  | ) |  |
| *Debtors.* | ) | Chapter 13 |
|  | ) |  |
|  | ) |  |
| Reginald J. Padgett, | ) |  |
|  | ) |  |
| *Plaintiff,* | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| Charles D. Hadley, III, | ) |  |
|  | ) |  |
| *Defendant.* | ) | APN: 09-07140-FJS |
|  | ) |  |

## MEMORANDUM OPINION

This matter comes before the Court upon trial of the above-captioned adversary proceeding. The Court has subject-matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a). Upon consideration of the pleadings, the evidence presented at trial, and the arguments of the parties, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. BACKGROUND

### A. The Debtors' Chapter 13 Case

On September 8, 2009, Charles D. Hadley, III (the "Defendant") and Janet M. Hadley (collectively, the "Debtors") filed, as joint-debtors, a voluntary petition for relief pursuant to Chapter 13 of Title 11 of the United States Code (the "Code"). (Case No. 09-73717-FJS, Doc. No. 1.) On September 14, 2009, the Debtors filed their first Chapter 13 Plan. (Case No. 09-73717-FJS, Doc. No. 12.) The Debtors filed an Amended Plan on January 29, 2010. (Case No. 09-73717-FJS, Doc. No. 33.) Ultimately, the Debtors filed a Second Amended Plan on April 19, 2010 and a Third Amended Plan on July 8, 2010. (Case No. 09-73717-FJS, Doc. Nos. 62, 81, respectively.) On August 3, 2010, the Chapter 13 Standing Trustee filed an Objection to Confirmation of the Debtors' Third Amended Plan, citing failure to make a lump sum payment required under the terms of the Plan.[1] (Case No. 09-73717-FJS, Doc. No. 90.) Subsequently, on November 16, 2010, the Chapter 13 Standing Trustee filed a Motion to Dismiss the Case for failure to make plan payments because the Debtors were five months in arrears on their Chapter 13 Plan (the "Motion to Dismiss"). (Case No. 09-73717-FJS, Doc. No. 96.) On January 6, 2011, the Court issued an Order settling the Motion to Dismiss. (Case No. 09-73717-FJS, Doc. No. 98.) The Debtors' Chapter 13 plan has yet to be confirmed by Order of the Court.[2]

### B. Factual History

The instant matter is one of three pending adversary proceedings filed against Defendant.

---

[1] The Chapter 13 Standing Trustee's Objection to Confirmation also states that the "Trustee has a pending Motion to Dismiss based on eligibility . . . [that] has been continued generally until the debtors' Objection to Padgett's Claim and Complaint to Determine Dischargeability and to Deny Discharge have been resolved." (Case No. 09-73717-FJS, Doc. No. 90.)

[2] On April 11, 2011, Debtors' Counsel filed an Application for Compensation. (Case No. 09-73717-FJS, Doc. No. 100.) On May 24, 2011, the Court held a hearing on the Application for Compensation and continued the matter until resolution of the adversary proceedings filed against Defendant. (Case No. 09-73717-FJS, Doc. No. 106.)

On December 14, 2009, Reginald J. Padgett ("Plaintiff" or "Padgett"), in the instant matter, filed

suit against Defendant seeking a determination of nondischargeability as to certain debts

pursuant to §§ 523(a)(2)(A) and 523(a)(4) of the Code. (APN 09-07140-FJS, Doc. No. 1.) On

that date, Direct Capital Group, LLC ("DCG") filed suit against the Debtors seeking a

determination of nondischargeability as to certain debts pursuant to §§ 523(a)(2)(A), 523(a)(4),

and 523(a)(6) of the Code. (APN 09-07141-FJS, Doc. No. 1.)[3] DCG also sought a denial of the

Debtors' discharge pursuant to § 727 of the Code. Lastly, on April 19, 2010, Textron Financial

Corporation ("TFC") filed suit against Defendant seeking a determination of nondischargeability

as to certain debts pursuant to §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Code. (APN 10-

07053-FJS, Doc. No. 1.) The Court will issue separate Orders and Memorandum Opinions for

each of the three pending Adversary Proceedings.

The facts of each adversary proceeding arise out of the same circumstances. Atlantic

Golf Cart and Equipment, Inc. ("Atlantic Golf") is corporation registered with the State

Corporation Commission for the Commonwealth of Virginia, and its principal business purposes

were (1) to sell new and used golf carts, (2) repair and service golf carts, and (3) lease out golf

carts. TFC's and DCG's allegations center around the fact that golf carts leased or sold to

Atlantic Golf disappeared from Atlantic Golf's inventory without the lessor or retailer having

been properly compensated, in contravention of existing contracts. Defendant guaranteed the

debts of Atlantic Golf, and, thus, TFC and DCG argue that, as a result of that guaranty (the

"Hadley Guaranty"; Pl.'s Ex. 7), the debts that Atlantic Golf owes to TFC and DCG are

nondischargeable.

---

[3] All parenthetical references to documents filed in the instant matter—APN 09-07140—shall be cited as (APN Doc.
No. __.), and any reference to documents filed in other adversary proceedings will included the relevant APN
number, such as (APN 09-07041 Doc. No. __.).

3

Defendant has been fully employed as a firefighter for the City of Chesapeake since 1984. (APN 09-07141-FJS, Pl.'s Ex. 11, at 7:17-20.) Defendant has been an officer and stockholder in Atlantic Golf since its inception in 1990. (APN 09-07141-FJS, Pl.'s Ex. 11, at 10:5-6.) Defendant served as vice president of Atlantic Golf between 1991 and 1998. Defendant became president of Atlantic Golf in 1998. (APN 09-07141-FJS, Pl.'s Ex. 11 at 9:17-18, 9:24-10:2.) Until October 31, 2001, Defendant held 50% of Atlantic Golf's stock. (APN 09-07141-FJS, Pl.'s Ex. 11 at 9:10-10:23.) Plaintiff held 50% of Atlantic Golf's stock up until October 31, 2001, when Padgett sold his 50% interest in Atlantic Golf to Defendant. (APN 09-07140-FJS, Doc. No. 1, ¶ 7.)

**1. The January 2001 Loan Agreements**

On January 9, 2001, TFC and Atlantic Golf executed a Finance Plan (the "Finance Plan"). (APN No.10-07053-FJS; Pl.'s Trial Ex. 1.) The Finance Plan set forth the terms by which an item sold to Atlantic Golf would be eligible for financing by TFC, including principal and interest payment obligations. The Finance Plan also afforded TFC the right to audit periodically the inventory of items financed by TFC in the possession of Atlantic Golf. (APN No. 10-07053-FJS; Pl.'s Trial Ex. 1.)

On January 9, 2001, TFC and Atlantic Golf executed a Wholesale Security Agreement (the "Wholesale Security Agreement"). The Wholesale Security Agreement granted to TFC a security interest in collateral—including golf carts and utility vehicles—in the possession of Atlantic Golf.[4] The Wholesale Security Agreement also sets forth events of default. Section

---

[4] Exhibit A to the Wholesale Security Agreement describes the Collateral in full:

All equipment and inventory, wherever located, in which [Atlantic Golf] now or hereafter has rights, financed or refinanced by [TFC] for [Atlantic Golf], including but not limited to golf cars [*sic*] and utility vehicles; all present and future attachments, accessories and accessions thereto; all

4

9(c) states that Atlantic Golf will be in default if it disposes of the collateral in any manner not in

compliance with Section 7 of the Agreement.  Section 7 states that Atlantic Golf "may sell any

item of Collateral PROVIDED THAT: (a) [Atlantic Golf] is not in default hereunder, (b) the

price obtained for such item of Collateral is not less than the unpaid Total Debt attributable

thereto, and *(c) [Atlantic Golf] holds all of the proceeds of any such sale in trust for, and*

*promptly remits the unpaid Invoice Cost of such item of Collateral to, [TFC]*."  (APN No.10-

07053-FJS; Pl.'s Trial Ex. 2, at 3 (emphasis added).)

## 2. The January 2001 Personal Guaranties

On January 9, 2001, Defendant executed, and delivered to TFC the Hadley Guaranty.

(Pl.'s Trial Ex. 7.)  In relevant part, the Hadley Guaranty states that Defendant

> unconditionally and irrevocably guarantees to [TFC] . . . without off-set or
> deduction, the prompt payment and/or performance of all indebtedness,
> obligations, and liabilities of Obligor at any time owing to [TFC], whether direct
> or indirect, matured or unmatured, primary or secondary, certain or contingent or
> acquired or created by [TFC] . . . .

(Pl.'s Ex. 7, at 1.)  The Hadley Guaranty is "governed by, and contrued [*sic*] in accordance with,

the laws of the state of Rhode Island, without reference to applicable conflict of law principles."

(Pl.'s Ex. 7, at 2.)

Between 1998 and January 2001, Plaintiff Padgett served as vice president of Atlantic

Golf.  (APN 09-07141-FJS, Pl.'s Ex. 11 at 10:14-23.)  On January 9, 2001, Plaintiff executed a

---

spare parts, replacements, substitutions and exchanges therefore; all trade-ins relating thereto; all
instruments, accounts and chattel paper arising therefrom (including leases and conditional sales
contracts); and the proceeds of all of the foregoing, including proceeds in the form of goods,
accounts, chattel paper, documents, instruments and/or general intangibles.

(APN No.10-07053-FJS; Pl.'s Trial Ex. 2, at Ex. A.)  Defendant accepted and signed Exhibit A to the Wholesale
Security Agreement.  On or before October 31, 2005, TFC caused to be filed with the Virginia State Corporation
Commission a UCC Financing Statement Amendment on FORM UCC3 concerning its interest in the Collateral
described above.  (APN No.10-07053-FJS; Pl's Trial Ex. 4.)

personal guaranty by which Plaintiff, in his individual capacity, guaranteed the debts of Atlantic

Golf to TFC (the "Padgett Guaranty"). (Pl.'s Ex. 8.) Plaintiff alleges that after October 31,

2001, he was no longer liable for the obligations and debts of Atlantic Golf, including the

Padgett Guaranty. (APN Doc. No. 1, ¶¶ 9, 11.)

By its terms, the Padgett Guaranty granted Plaintiff the right to revoke the Padgett

Guaranty. Plaintiff was able to "prospectively revoke this Guaranty by sending written notice . .

. to [TFC]." (Pl.'s Ex. 8, at § 2.) Revocation would be deemed effective after fifteen days from

the date on which TFC received the revocation notice by certified mail, return receipt. (Pl.'s Ex.

8, at § 2.) There is no evidence in the record before the Court, nor have the parties ever argued,

that Plaintiff sent to TFC revocation of the Padgett Guaranty. Rather on September 26, 2008,

despite Plaintiff's prior divestment of stock in Atlantic Golf and that Plaintiff ceased to be

employed with Atlantic Golf in 2001, TFC sent to Plaintiff, in his capacity as guarantor, the

letter notifying Atlantic Golf of its default (the "Default Letter").[5] (Pl.'s Ex. 9.) The Court, thus,

finds as a finding of fact that Plaintiff never revoked the Padgett Guaranty.

## II. PROCEDURAL HISTORY

### A. The State Court Action

In October 2008, TFC filed a complaint in the Circuit Court for the City of Chesapeake,

Virginia against Atlantic Golf, Hadley, and Padgett. (Compl. ¶ 13; Case No. CL09-210, the

"State Court Action".) The State Court Action was assigned to the Honorable Randall D. Smith.

Ultimately, in the State Court Action, that Court, by Order dated July 22, 2009, rendered

---

[5] The Default Letter states: "By copy of this letter, [TFC] is informing [Hadley] and [Padgett] (individually and
collectively, "Guarantor") of [Atlantic Golf's] default, and pursuant to Guarantor's guaranty of [Atlantic Golf's]
obligations under the Agreement, [TFC] hereby makes demand on Guarantor to pay the Demand Amount." (Pl.'s
Ex. 9.)

judgment in favor of the plaintiff, TFC, against defendants Atlantic Golf and Hadley. (APN 10-7053-FJS, Doc. No. 1-1, Ex. 7.) *The Order in the State Court Action* (the "State Court Judgment") awarded (1) compensatory damages of $193,196.24 to TFC; (2) accrued interest to TFC; (3) costs to TFC; and (4) attorneys' fees in the amount of $20,500.00 to TFC. "Nothing [in the] Order precludes or prejudices Textron Financial Corporation from pursuing its rights and remedies against the remaining defendant Reginald J. Padgett." (APN 10-7053-FJS, Doc. No. 1-1, Ex. 7.)

On August 26, 2009, Padgett and TFC reached a settlement in the State Court Action (the "Settlement Agreement"). (Pl.'s Ex. 16.) TFC and Padgett agreed to enter into a mutual release and the dismissal with prejudice of all pending litigation against Padgett. Pursuant to the Settlement Agreement, Padgett paid TFC $37,500.00. In exchange for the payment of $37,500.00, TFC assigned to Padgett all rights and remedies of TFC for the enforcement and collection of the amount or amounts paid. (Pl.'s Ex. 16.)

### B. Plaintiff's Adversary Complaint

On December 14, 2009, Plaintiff filed the instant matter against Defendant (the "Complaint"). (APN Doc. No. 1.) In the Complaint, Plaintiff states that he and Defendant each executed personal guaranties by which each individual (i) guaranteed the payment of debts Atlantic Golf incurred through a financing agreement with TFC and (ii) guaranteed the performance of obligations that Atlantic Golf owed to TFC. (Compl. ¶¶ 10-12.) In the Complaint, Plaintiff avers that he and the Defendant were the original shareholders in Atlantic Golf but that on or about October 29, 2001, Defendant agreed to purchase all of Plaintiff's stock in Atlantic Golf. (Compl. ¶¶ 5-7.) Plaintiff "had no involvement in the business or operations of Atlantic [Golf] after October 31, 2001." (Compl. ¶ 8.)

7

In August 2008, Atlantic Golf had defaulted on its obligations to TFC.  Subsequently, on

September 26, 2008, TFC advised via letter Atlantic Golf, Defendant, and Plaintiff that Atlantic

Golf was "in default under the terms of the Wholesale Security Agreement dated January 9, 2001

. . . between [Atlantic Golf] and [TFC]."  (APN 10-7053-FJS, Trial Ex. 6.)  In that letter, TFC

"makes demand on Guarantor to pay the Demand Amount."  (APN 10-7053-FJS, Trial Ex. 6.)

As detailed above, TFC proceeded to exercise its rights in State Court, and ultimately received

the State Court Judgment against Hadley and Atlantic Golf.  Padgett, later, reached the

Settlement Agreement with TFC.

In the Complaint, Plaintiff avers that "[p]ursuant to Va. Code § 49-27 and that certain

Settlement Agreement and Mutual Release fully executed and dated August 26, 2009, between

Textron and Padgett, Padgett paid $37,500.00 to [TFC] on account of the Textron Judgment

Order."  (Compl. ¶ 16.)  Plaintiff alleges that, under Va. Code § 49-27 and according to the terms

of the Settlement Agreement, Plaintiff is "substituted to and the owner of all rights and remedies

of [TFC] for the enforcement and collection of the amount or amounts so paid, and is deemed the

assignee thereof."  (Compl. ¶ 17.)  As such, Plaintiff seeks compensatory damages from

Defendant in the amount of $37,500.00 plus interest and attorneys' fees and costs.  (Compl. ¶

18.)

Plaintiff alleged two counts in the Complaint: (1) § 523(a)(2)(A), and (2) § 523(a)(4).  At

trial, on August 11, 2010, the Court dismissed with prejudice the § 523(a)(2)(A) count because

Plaintiff was unable to proceed with evidence in support of that count.  (APN Doc. No. 24; APN

10-07053-FJS, Doc. No. 20, at 19:23-20:3.)  As to the § 523(a)(4) count, Plaintiff alleges that

Defendant incurred the debt covered by the State Court Judgment through fraud or defalcation

while acting in a fiduciary capacity.  As a result of that purported fraud or defalcation, Defendant

8

injured TFC, and, later, Plaintiff paid to TFC a portion of the State Court Judgment—
$37,500.00.  (Compl., at 8.)  Plaintiff further alleges that by operation of law, per Va. Code § 49-
27, Plaintiff may enforce the § 523(a)(4) rights of TFC against Defendant in order to recoup the
$37,500.00 paid by Plaintiff.  (Compl., at 8.)

On August 10, 2010, Plaintiff filed a Motion to Amend its Complaint and a Brief in
support thereof (collectively, the "Motion to Amend").  (APN Doc. Nos. 19, 20.)  The Motion to
Amend sought leave of the Court, per Federal Rule of Civil Procedure 15, to amend the
Complaint to add a § 523(a)(6) count—seeking nondischargeability of a debt due to willful and
malicious injury by the Debtor.  (APN Doc. No. 20, at 3.)  On August 12, 2010, the Court
granted the Motion to Amend.  (APN Doc. No. 22.)

### III. ANALYSIS

As stated below, Plaintiff's § 523(a)(4) count against Defendant is granted.  At the outset,
however, the Court notes that but for the modification of the rights of Plaintiff and TFC in the
Settlement Agreement, Plaintiff would have waived his rights of subrogation by the terms of the
Padgett Guaranty.  (Pl.'s Ex. 8, at 2, § 4(c).)  As executed on January 9, 2001, § 4(c) of the
Padgett Guaranty states that Padgett waives "[a]ny right which Guarantor may at any time have
against Obligor, *or any other party liable for any Guaranteed Obligation*, as the result of the
performance by Guarantor of its obligations under this Guaranty, including, but not limited to,
contractual, statutory and common law rights of subrogation, reimbursement and
indemnification."  (Pl.'s Ex. 8, at 2, § 4(c) (emphasis added).)  On August 26, 2009, after the
Padgett Guaranty, TFC and Plaintiff executed the Settlement Agreement, thereby modifying the
rights of Padgett and permitting Padgett, via assignment, to pursue reimbursement from
Defendant, as explained below.

9

## A. TFC Has A Valid § 523(a)(4) Cause Of Action Against Hadley

As stated in the Court's Memorandum Opinion issued in *Textron Financial Corp. v. Charles D. Hadley, III* issued on this date (the "TFC Decision"), TFC's § 523(a)(4) count against Hadley is valid. (APN No. 10-07053-FJS.) For the reasons stated in the TFC Decision, Hadley's debt to TFC in the amount of $131,136.00 is deemed nondischargeable per § 523(a)(4).[6]

In summary, the Court finds that Hadley's debt to TFC is nondischargeable for his defalcation while acting in a fiduciary capacity. The Court finds that Hadley personally guaranteed the indebtedness of Atlantic Golf to TFC. The Court finds that the indebtedness of Atlantic Golf to TFC arose as a result of a defalcation that breached a fiduciary relationship between TFC and Atlantic Golf. The Court finds that Hadley was responsible personally for the conduct that gave rise to Atlantic Golf's defalcation and breach of its fiduciary duty to TFC. Lastly, the Court finds that Hadley's conduct was a breach of his fiduciary duty to Atlantic Golf. The Court finds that TFC proved each of these four elements—as required by the Fourth Circuit in *Kubota Tractor Corp. v. Strack* (*In re Strack*), 524 F.3d 493, 497-500 (4th Cir. 2008)—by a preponderance of the evidence per Federal Rule of Bankruptcy Procedure 4005.

According to the Settlement Agreement, upon payment of $37,500.00, "Padgett shall, by operation of law pursuant to Va. Code § 49-27 and pursuant to the terms hereof, be substituted to and become the owner of all of the rights and remedies of TFC for the enforcement and collection of the amount or amounts so paid, and shall be deemed the assignee thereof." (Pl.'s Ex. 16, at 2-3.) If the assignment is valid, then Plaintiff may assert the rights of TFC against Defendant and the debt of $37,500.00 that TFC assigned to Plaintiff shall be deemed

---

[6] TFC's § 523(a)(6) count against Hadley is dismissed without prejudice for the reasons stated in the TFC Decision.

10

nondischargeable per § 523(a)(4). Therefore, the issue before the Court is whether TFC's

purported assignment of its rights, including the § 523(a)(4) cause of action, comports with

Virginia law and Rhode Island law. The Court will consider the laws of each jurisdiction in turn

because (1) Plaintiff and TFC executed the Settlement Agreement in accordance with the laws of

the Commonwealth of Virginia; and (2) Plaintiff and TFC executed the Padgett Guaranty in

accordance with Rhode Island law. (Pl.'s Ex. 16, at 4, ¶ 7; Pl.'s Ex. 8, at 2, § 6.)

### B. TFC's Assignment Of Rights To Padgett Is Valid Per Virginia Law

TFC's assignment of its § 523(a)(4) rights against Defendant to Plaintiff is valid and

sufficient according to the laws of the Commonwealth of Virginia. Virginia Code § 8.01-26

states:

> Onl y those causes of action for damage to real or personal property, whether such
> damage be direct or indirect, and causes of action ex contractu are assignable.
> The provisions of this section shall not prohibit any injured party from making a
> voluntary assignment of the proceeds or anticipated proceeds of any court award
> or settlement as security for new value given in consideration of such voluntary
> assignment.

Va. Code § 8.01-26. The Court's emphasis rests on the first clause of § 8.01-26. Three

categories of causes of action are assignable according to the statute: (1) damage to real property;

(2) damage to personal property; and (3) ex contractu. Neither in this case nor in the associated

adversary proceedings, do any of the plaintiffs allege that Defendant or Atlantic Golf damaged

the real property of any of the plaintiffs. In this case, there are, however, allegations that

Defendant did damage to the personal property of Atlantic Golf and that Defendant breached his

contractual duties that arose out of the Hadley Guaranty.

The Supreme Court of Virginia has held that if and when a party breaches a duty that

arose by way of contract, the resulting breach of fiduciary duty action sounds in contract law.

*See O'Connell v. Bean*, 263 Va. 176, 180-81 (Va. 2002); *cf. Foreign Mission Bd. of the S.*

11

*Baptist Convention v. Wade*, 242 Va. 234, 241 (Va. 1991). In *O'Connell*, the Supreme Court of

Virginia held that in a legal malpractice action where the plaintiff-client asserted breaches of the

"contractually implied duties of due care and fiduciary responsibility [which] employ tort

concepts" those "assertions of breaches of fiduciary duty and constructive fraud, while sounding

in tort, are actions for breaches of the implied terms of [defendant-lawyer's] contract."

*O'Connell*, 263 Va. at 182. "But for the contract, [defendant-lawyer] would have no duties to

[plaintiff-client]." *Id.* at 181; *see also Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256

Va. 553, 558 (Va. 1998) ("In determining whether a cause of action sounds in contract or tort,

the source of the duty violated must be ascertained.").

The analysis and conclusion reached by the Supreme Court of Virginia in *O'Donnell* is

applicable to the instant matter. In this case, but for the underlying agreements between Atlantic

Golf and TFC and the Hadley Guaranty there would have been no duties owed to TFC by Hadley

on behalf of Atlantic Golf or in his personal capacity as guarantor. Hadley's and Atlantic Golf's

duties to TFC arise solely by virtue of contract. Further, under Virginia law, a litigant may aver

and prove "both a breach of contract and a tortuous breach of duty." *McDevitt Street Bovis, Inc.*,

256 Va. at 558. "However, 'the duty tortiously or negligently breached must be a common law

duty, not one existing between the parties solely by virtue of the contract.'" *Id.* (quoting *Wade*,

242 Va. at 241) (internal citations omitted). No common law duties existed between TFC and

Atlantic Golf or Hadley. The Wholesale Security Agreement, and other underlying agreements,

and the Hadley Guaranty created all the duties and obligations between TFC, Atlantic Golf, and

Hadley. The contracts executed between the parties are the sources of Atlantic Golf's and

Hadley's duties. Therefore, the Court finds that TFC's § 523(a)(4) cause of action is ex

contractu within the scope of Va. Code § 8.01-26. Thus, TFC's assignment of § 523(a)(4) rights,

12

in part, to Plaintiff is valid.  Plaintiff succeeds to the § 523(a)(4) rights of TFC, to the extent of

$37,500.00.

### C. TFC's Assignment Of Rights To Padgett Is Valid Per Rhode Island Law

TFC's assignment of its § 523(a)(4) rights against Defendant to Plaintiff is valid

according to the laws of the State of Rhode Island.  For nearly a century, it has been well settled

under Rhode Island law that a cause of action is assignable.  "Originally a chose in action was

not assignable, but to-day its assignability is generally recognized.  After an assignment the

assignee is the equitable owner of the debt and the law has long enforced his right to recover the

same in assumpsit by suing in the name of the assignor."  *Goodman v.* Zitserman, 47 R.I. 466,

(R.I. 1926) (citing *Clarke v. Thompson*, 2 R.I. 146; *Tucker v. Providence & Worcester R.R. Co.*,

18 R.I. 322; *Westminster Bank v. Atherton*, 24 R.I. 334).  The First Circuit makes clear that an

action for assumpsit sounds in contract.  *See Sugarman v. Sugarman*, 797 F.3d 3, 14-15 (1st Cir.

1986) ("It is true that, under common-law pleadings, a plaintiff could choose to bring an action

of assumpsit upon a 'promise or contract implied by law in certain cases.  It is founded on what

the law terms an implied promise on the part of a defendant to pay what, in good conscience, he

is bound to pay plaintiff.'") (quoting Black's Law Dictionary at 157).  A cause of action that

arises via a contractual relationship that creates fiduciary duties between the parties sounds in

contract.

Rhode Island has, by statute, stated that causes of action are assignable.  Section 9-2-8 of

the Rhode Island General Laws states that:

> The assignee of a nonnegotiable chose in action which has been assigned in
> writing may maintain an action thereon in his or her own name, but subject to all
> defenses and rights of counterclaim, recoupment, or setoff to which the defendant
> would have been entitled had the action been brought in the name of the assignor.

R.I. Gen. Laws § 9-2-8 (1956); *see also Sheehan v. Richardson*, 315 B.R. 226, 238-39 ("The

right to bring suit is an assignable form of property recognized under Rhode Island law.") (citing

R.I. Gen. Laws § 9-2-8 (1956); *New Bedford Inst. For Sav. v. Calcagni*, 676 A.2d 318, 320 (R.I.

1996)). Applying Rhode Island law, which controls the application of the Padgett Guaranty, the

Court concludes that TFC is permitted to assign its property rights in its cause of action against

Hadley to Plaintiff. The crux of § 9-2-8 requires that the assignment occur in writing. That

requirement is satisfied in this case because the Settlement Agreement is in writing and in the

record before the Court. (Pl.'s Ex. 16.) Thus, Plaintiff may maintain an action against

Defendant in Plaintiff's own name, subject to all the defenses and counterclaims to which

Defendant was entitled to assert against TFC.

Furthermore, under Rhode Island law "[a] chose in action is assignable and enforceable

provided it is supported by adequate consideration." *Am. Title Ins. Co. v. Shawmut Bank of R.I.,*

*N.A.*, 812 F. Supp. 301, 305 (D.R.I. 1993) (citing *Hospital Serv. Corp. v. Pa. Ins. Co.*, 101 R.I.

708 (R.I. 1967)). In this case, Plaintiff provided adequate consideration to TFC in the form of

payment of $37,500.00 pursuant to the Settlement Agreement. For that consideration, (1) TFC

"take[s] the steps necessary to dismiss with prejudice the Litigation pending in the City of

Chesapeake Circuit Court"; and (2) Plaintiff succeeded to "all of the rights and remedies of TFC

for the enforcement and collection of the amount or amounts so paid, and shall be deemed the

assignee thereof." (Pl.'s Ex. 16, at 2-3.) In exchange for Plaintiff's advancement of funds, TFC

dismissed its complaint against Plaintiff in state court and assigned, in part, its rights and

remedies against Hadley for the collection of the funds that Plaintiff paid. The Court concludes

as a matter of law, in accordance with Rhode Island law, that TFC's § 523(a)(4) cause of action

is assignable and enforceable because it is supported by adequate consideration paid by Plaintiff.

## IV. DAMAGES

As stated above, the Court will grant Plaintiff's § 523(a)(4) count for fraud or defalcation while acting in a fiduciary capacity. Plaintiff succeeds to the rights and remedies of TFC and the Court has granted TFC's § 523(a)(4) count against Defendant in the TFC Decision. In the TFC Decision, the Court held that Defendant owes TFC for the out-of-trust proceeds in the amount of $168,636.00. Plaintiff's partial satisfaction of that claim in the amount of $37,500.00 has been credited to TFC in the TFC Decision. Thus, damages have been awarded to TFC in the amount of $131,136.00 in the TFC Decision.

Plaintiff's payment of $37,500.00 has been admitted into evidence before the Court. (Pl.'s Ex. Nos. 16, 17.) Pursuant to the terms of the Settlement Agreement, Plaintiff succeeds to "all of the rights and remedies of TFC for the enforcement and collection of the amount or amounts so paid, and shall be deemed the assignee thereof." (Pl.'s Ex. 16, at 2-3.) As stated above, the assignment of the § 523(a)(4) cause of action by TFC to Plaintiff is valid. The § 523(a)(4) cause of action is encompassed by "all of the rights and remedies of TFC," and, therefore, Plaintiff's § 523(a)(4) count against Defendant is valid in the amount of $37,500.00.

Lastly, Plaintiff and Defendant have each requested attorneys' fees and costs. (Compl., at 8; Answer at 3.) The Court denies Plaintiff's request for attorneys' fees and costs because "neither position taken by the Plaintiff and Defendant was frivolous or without merit." *Reilly v. Beeman (In re Beeman)*, 225 B.R. 522, 529 (Bankr. D. N.H. 1998); *see also Tanner's Transfer & Storage of Va., Inc. v. Florance (In re Tanner's Transfer & Storage of Va., Inc.)*, 39 B.R. 835, 840 (Bankr. E.D. Va. 1984). There is no evidence in the record before the Court that either party or either party's counsel acted in bad faith or took a position that lacked merit or that may be deemed frivolous—in the instant matter or in the State Court Action. As such, each party shall

15

bear its own attorneys' fees and costs.

## V. CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff Reginald J. Padgett's

Complaint against Defendant Charles D. Hadley seeking a determination of nondischargeability

as to certain debts pursuant to 11 U.S.C. § 523(a) is GRANTED IN PART AND DENIED IN

PART. Plaintiff's § 523(a)(4) Count is GRANTED and the Court awards Plaintiff Reginald J.

Padgett damages in the amount of $37,500.00. For the reasons stated in the Memorandum

Opinions issued on this date in the adversary proceedings styled *Textron Financial Corp. v.*

*Hadley* and *Direct Capital Group, LLC v. Hadley*, (APN Nos. 10-07053-FJS and 09-07141-FJS,

respectively), the Court DENIES WITHOUT PREJUDICE Plaintiff Reginald J. Padgett's §

523(a)(6) count.

Upon entry of this Memorandum Opinion, the Clerk of Court is directed to serve via

United States Mail, first class postage prepaid, a copy of this Memorandum Opinion to: Jeffrey

L. Marks, Esq., Kaufman & Canoles, Suite 700, 2101 Parks Avenue, Virginia Beach, Virginia,

23451; Leonard D. Levine, Esq., Childress, Flax, Levine, P.C., 533 Newtown Road, Suite 101,

Virginia Beach, Virginia, 23462; Charles David Hadley, III, 1006 Broward Way, Chesapeake,

Virginia, 23322; Michael P. Cotter, Esq., Chapter 13 Trustee, 870 Greenbrier Circle, Suite 402,

Chesapeake, Virginia, 23320; Reginald J. Padgett, Esq., 1005 Cronin Court, Chesapeake,

Virginia, 23322; James T. Lang, Esq., Pender & Coward, P.C., 222 Central Park Ave., Virginia

Beach, Virginia, 23462; Daniel F. Blanks, Esq., McGuireWoods LLP, 9000 World Trade Center,

101 W. Main St., Norfolk, Virginia, 23510; Erin Quinn Ashcroft, Esq., McGuire Woods LLP,

101 W. Main Street, 9000 World Trade Center, Norfolk, Virginia, 23510.

A SEPARATE ORDER WILL ISSUE.

DATED:

8-19-2011

FRANK J. SANTORO
United States Bankruptcy Judge

NOTICE OF JUDGMENT OR ORDER
Entered on docket
AUG 1 9 2011

17